May it please the Court, I'm Jack Schweigert on behalf of the appellants, Cindy Long and the estate of Dustin Long. Analyzing the facts of this case, I think it becomes easier if you look at the excerpt of record. I would draw your attention to page 40, because in page 40 we have a diagram of the scene. And sometimes, you know, hearing who's saying what without a point of reference is a difficult thing to follow. When you look at this diagram, the point of reference is this diagram was used in part by Ms. Long's expert, he's a reconstructionist named Mr. Calhoun. And what Mr. Calhoun did was he went out to that scene on several occasions, both at nighttime and in the daytime, filmed, took measurements, in an effort to reconstruct what must have happened on the night in question. And more specifically, Your Honors, his focus was to identify what would and what would not be seen from the various vantage points where the police would be stationed. And the locations of where the police would be stationed was locked in by way of deposition testimony from the various police officers who were at the scene on June 3, 2001. Well, the issue you've got to deal with, it seems to me, is whether Officer Sterling has qualified immunity to shoot at the time he did, knowing what he knew and could see. What can you shed on his perception, which is what we focus on, is it not? Absolutely. There's a question as to the credibility of Officer Sterling. He will tell you that at the time he takes the shot. Well, now, in terms of credibility, the jury's already decided that, right? The jury will decide that. This is a summary judgment. Oh, I'm sorry. Excuse me. I'm sorry. You're absolutely right. So my whole focus will be to show you that there are major factual disputes and... We accept the statements as true. That's one of the rules of summary judgment, right? We take the statements as true by the non-moving party. If there's a dispute... No, no. We take everybody's statements as true, and then we see if that gives rise to a dispute. Right? Accepting both sides as true. And that's like... I think there was a most recent case that came down from the Supreme Court and then a reaffirmation by the Ninth Circuit that says unless the statements are just totally so unbelievable that they should not be taken as true. And that was a case where I think a police car is chasing a fleeing suspect, and there's a video camera, and the fleeing suspect is making statements about what he says is true versus what the camera obviously shows to be disparity between his version and the facts. I appreciate your contention there, counsel. But as Federalist Candland suggests, what we're really dealing with here is a legal standard. And help me, if you will, please, with this. This officer... The question is whether he acted in an objectively reasonable fashion. That's right. Your... Mr. Long apparently had shot somebody, two people, hit them. Correct. He was agitated. He was shouting threats at the police. Even though he may have wanted to surrender, he didn't. Apparently, Officers Marini and Cannella were located in an area near where Long was pacing with a .22 caliber rifle. Sterling heard over the radio that Long had fired a shot at his fellow officers. Under the circumstances, how do you conclude that it was not objectively reasonable, having just heard on the radio that he'd shot, to try to take him out with that rifle? If you take a look at the excerpt, page 40, you'll see where all the players are. You'll see that Officers Marini and Officers Cannella would be on the right side, as you're looking at the page, Your Honor, of what's called a bamboo thicket. Right. Okay. So, they're over there. Now, there's disparity as to what they say. They say, at the time that Officer Sterling hears them radio report we're being fired upon, they say that, at that point in time, they heard my client come out. He's saying vulgarities to them. Right. He's saying, I told you whatever to stay out of here. They say he chambers a round, which would not occur because there's allegedly a shot taken a half an hour earlier, which would have already loaded that weapon. Then they say, once they heard that chambering of the round, and there's some disparity between those two officers, that they turn and run and jump into a ditch. As they're jumping into that ditch, they say they heard long fire at them, at which time they radio, one of them, Officer Marini radios, we're being fired upon, and Sterling takes them out. The only problem with that is Officers Marini and Officers Cannella were already in that ditch. I draw your attention to the CAS report, where you'll see they were in that ditch for a totally different reason. They were in that ditch already, four minutes before this incident, where they're allegedly hearing the chambering of the round, turning and jumping into the ditch, hearing long allegedly fire at them as they're jumping into the ditch. I appreciate that. You're questioning the credibility of the testimony of the officers. The key here is what Sterling understood. It was what was objectively reasonable to him. Even if the other two officers were just lying through their teeth, the question is, what did Sterling understand? What was he dealing with? That's why I would draw your honor to this excerpt, page 40. You'll see Sterling is going to be at the bottom of the diagram. He's in the position called B. My client is up above that position down the driveway. He's in position H. We have Sterling and Officer Dahlbeck in B. We have Long in position H. Sterling, regardless of what he hears over his radio, has got a clear view of Mr. Long. He's not only got a clear view of Mr. Long, he's got a clear view of 15 feet on both sides of Mr. Long, so he can fully see what Mr. Long is doing. He does not describe Mr. Long as calling threats. How do you interpret the record as to what did he see? Sterling, I mean. He says he saw my client, your honor, lift a rifle to his shoulder length and take a shot. He says he heard the shot and he says he saw the rifle jerk. Now, are you saying we shouldn't believe that? That's correct. All right. One reason there was never a case. Well, why don't you do this? Why don't you just give us what you believe the undisputed facts are that we should base our decision on? The undisputed facts are that there was no shell casing. The undisputed facts are that. Well, is it an undisputed fact that Sterling saw Long holding a rifle? That's an undisputed. That's a disputed fact. There's a question as to whether Long even had a rifle. What do you mean a question? Because. Well, what contradicts Sterling's statement that he saw Long holding a rifle? The fact that an earlier incident where there's a guy named Mr. Curt Umano. Curt Umano had been over at that house prior to the police coming. And after Mr. Long had shot that rifle at those people earlier on in the evening, a couple hours earlier on in the evening, Mr. Umano hid the rifle. So there was a question as to whether Long even had a rifle at 4 o'clock in the morning. And the question is brought about because to have a rifle, he would have had to have found what Curt Umano had hid. And he hid it in the garage. So there's a question of fact on whether he even had a rifle. I don't think that necessarily makes Sterling's statement disputed because Umano said several hours earlier he hid the rifle. Right? Well, two hours earlier. That's right. It doesn't dispute the statement, I don't think, necessarily, that he saw him with the rifle, with that rifle. Well, I guess that raises a question. See, I think what you're doing is, I mean, you're making these, I suppose it's possible, but I mean, the statement you just made, for instance, well, he hid the rifle two hours before, so obviously it would be impossible for anybody else, for him to have a rifle two hours later. I don't think that's necessary, too, is it? No, it's not. All right. Then it's not disputed, is it? Sterling says, I saw him with a rifle, and it's an undisputed fact. So I think you have to accept that on summary judgment. For purposes of argument, I think you're right. Because the only point of it is, is what Sterling says he does with that rifle is the issue. Having a rifle, as you know from cases like Harris, the Ruby Ridge case, having a rifle, having shot people earlier in the day, doesn't give you the right to kill an individual or to resort to deadly force. It's only when that individual is pointing that rifle at somebody and somehow posing an immediate threat that an officer has the right to take them out. But let's say for a moment that whether or not the other two officers allegedly went into the ditch for telling the truth or not, is there anything in the record that suggests that Sterling did not hear a report from the radio saying that they had been fired upon? No, there's not. So for purposes of our analysis, Sterling saw Long with a rifle. He heard on the radio that the other two officers had been fired upon. Under those circumstances, since he's a sharpshooter, why wouldn't he be in a reasonably objective fashion justified in shooting Long? Well, first of all, he sees Long. Right. And so he sees what Long's doing. Right. So for I don't care what a thousand other officers might care to say, that would not be reasonably trustworthy information because Sterling is looking at it with his own two eyes. But he has a rifle and he's hearing that they fired upon him. As I understand it, he testified that he saw him take the rifle up into a shooting position and it appeared to backfire, which would suggest he had shot the rifle. Right. He says he even heard the bullet. Okay. So under the circumstances, where is the lack of reasonable objectivity on Sterling's part? If what Sterling says he saw really took place, there would be a shell casing. There would have been a sound of the sound of the bullet going off heard by many, many other people. No private people heard that sound. None. No shell casing was found from that phantom shot. And our expert says there would have been a shell casing and it would have been right in the area where he was shot. No shell casing was found despite they got down on their hands and knees and they even used in part a metal detector to try to find it. What kind of rifle? This is a .22 rifle, right? That's the kind Long had. Okay. And I've shot lots of .22s over the years and there are plenty of .22s that you shoot and there's no casing that goes out until after you pull the hammer back or the bolt back and it goes out then. Why couldn't he have shot the .22, not ejected the shell and it still would be in the rifle? Because it's automatic. Okay. So the kind of rifle that he had automatically kicked it out. Right. And our expert, Mr. Calhoun, specifically says that. Our expert was actually able to take the weapon, the very weapon that Mr. Long had, and take it out to a firing range. There was a certain stipulation with the court. We were able to go to the police station and get the weapon, take it out and test fire it and do all that had to be done. Okay. Well, let's continue with your analysis then. Let's assume for a moment that if he had shot, there would have been a casing. .22s are not very loud. They're really fairly quiet. Why are we to assume that Sterling would have to be a liar if he saw what he saw and didn't hear anything? He says he heard. Okay. He's saying he said he heard it. So if he heard it and you can't find the casing, you mean that by definition you want us to assume that he is lying. Well, there's more to it than that. Okay. If what he says he saw he truly did see, you would have had a shell casing and you would have had many other people say we heard that shell as well. His partner doesn't see any of this particular very incident where there's allegedly the raising of the rifle, the shooting of the gun. Yet his partner is one foot away, and his partner, our expert went out to say, his partner is saying, you know, when my client goes across the driveway over to where these Marini and Cannella officers are at, this Officer Dahlbeck is saying he goes out of our view. Our expert goes to that very site and says that's impossible. From the spot that they were on, from the garage roof across the street, down the driveway, being one foot apart, the inability to see what Officer Sterling would be is an impossibility. What Sterling saw, Dahlbeck saw. Those are two snipers, and the way it works is Sterling would be on his gun and Officer Dahlbeck would be the spotter. So the spotter is now arguing that he somehow can no longer see the suspect from bushes that don't exist. For purposes of summary judgment, taking the facts in the light most favorable to my client, not seeing something that you, in fact, should be able to see is something from which I believe a negative inference can be drawn. You just don't want to see it. That's the same kind of attitude that was shown by Officer Burns, who, if you take a look at this diagram on page 40, is over on the back side of the property. He's at position number E. He should be able to see the entire incident, and he doesn't see anything until after Long is shot and is laying there groaning on the ground. But he should be able to see, as our expert said, having gone out there both day and night under all conditions, he should have been able to see Long over in the position of H. He could, in fact, see the hedge from the position over here at position E. So there's more than just Officer Sterling saying what he saw. The fact that if he saw what he saw, there had to have been a shell casing. People had to have heard it. This is like 4.51 in the morning. Even also, what troubles me about your analysis is that it requires us to somehow or other doubt, not to say that the testimony is false, but to doubt these statements. And we are not in front of a jury. We have to simply take the statements as they are, do we not, at least at this stage? Well, I think I would question that, Your Honor. And the case I would draw your attention to is Scott v. Hendrick. To me, that's a real on-point case because in Scott v. Hendrick, it specifically says that deadly force cases pose particularly difficult problems under this regimen because the officer defendant is often the only surviving witness. And what it goes on to say is that the court must ensure that the officer is not taking advantage of the situation, knowing that there's nobody else except him to identify what's going on. And they specifically say that what you must do, the court may not simply take what they say as self-serving statements, but that they actually have to look to see if the officer's story is internally consistent and also consistent with the rest of the record. Is Officer Sterling's assessment internally consistent? The answer, no. How do I say no? He makes like four different accountings of this shooting incident. The first one is when he does his immediate follow-up report on June 7, 2001. In that report, he's actually got my client walking away from the scene where he's allegedly just taken that shot. So no longer is there an immediate threat. He's walking away from that scene. In fact, my expert is able to quantify, having gone out there to exactly pinpoint where Mr. Long would have been shot, that at the time Mr. Long is shot, he is 120 degrees away from the bushes where he's alleged to have taken the shot and 30 degrees from perpendicular of Officers Dahlbeck and Sterling down the driveway so that he's basically going away from the scene. The question becomes, is there an immediate threat to any of the officers at the time Officer Sterling takes his shot? If he's 30 degrees away from Sterling and he's 120 degrees away from the bushes, he's going away from the scene. In that most recent Supreme Court case that came down in 2007 that talks in terms of an officer shooting someone as they're fleeing away, or all of the cases, once the immediate danger has passed, unless you have reason to believe that he's going to go on some kind of shooting spree thereafter, you no longer have that immediate threat warranting the use of deadly force. Keeping in mind, this kid is at his home. Keeping in mind that he is surrounded by SWAT officers, there's no allegation that he's fleeing the scene. The only question is, is he taking a shot at two officers who say they're jumping in a ditch to avoid being hit by Long's shot, but have been in that ditch for already four minutes? By the way, the accuracy of that recording, it's called a CAS report, Ms. Batiste, who we did depose, she says it's accurate. The way it works is you take one line, reporter's taking everything down on this alert to radio station, and as one line goes through, then she hits an enter button. So it's off by as much as just a few seconds. So when you take a look at the CAS report, and this is worth noting, Marini and Canella, just so you have a point of reference. Counselor, your time has expired. Okay. I think we all know about the CAS report, and we certainly have your understanding about the gaps. Okay. Thank you, Counselor. Thank you very much. You're very welcome. Now we'll hear from the city and county. Thank you, Your Honors. My name is Brian Heon. I represent the Akeli City and County of Honolulu, and Officer Patrick Sterling. Rather than repeat what you just said. By the way, my condolences to your fellow counsel, who apparently has lost his voice. I'm getting there soon, but I hope it won't happen until after we finish our sitting. Thank you, Your Honor. I believe that the court correctly, based upon the questions to Mr. Schweiger, correctly analyzed the standard is whether Officer Sterling acted in an objectively reasonable fashion. And in that regard, I'd like to. Can I just interrupt you for one second? Sure. What is the standard for purposes of reviewing a summary judgment in this type of case? Are we to take all statements of all parties as being correct? Are we to favor one side or the other? I believe it's a de novo review, so you would take all statements as being correct. And in that regard, if you look at the reply brief, the appellant raises several issues which he claims are disputed facts. For example, he spoke about the fact that Long was armed in and of itself, doesn't allow use of deadly force. He claims that Long had previously shot two people, but that was much earlier in the evening. And this dispute about Officers Marini and Canella, the timing of their jumping into the ditch. We will submit that it's not anyone's particular factor that the court has to look at it from the perspective of a reasonable officer at the scene under the circumstances and without the benefit of 20-20 hindsight. Well, Counselor, I think you need to respond to Mr. Schweigert's analysis. He takes, he first of all starts with the map, and then he asks us to interpret what these recitals say, but in the light of what might or might not have been able to be seen from different places on the map. I think you need to respond to that. In terms of, the key issue is what Officer Sterling saw and heard. And in that regard, what Officer Sterling said was that he saw Long armed with the rifle, facing in the direction where Officers Marini and Canella were, and he heard, it's undisputed that he heard over the radio the report that they were being shot at. Where was the rifle found after this incident? Was it anywhere near Long, or was it back in the garage? It was found either under Long or in his immediate vicinity. All right. So that's a fact that can be taken into account in terms of analyzing what actually happened, or at least what Officer Sterling's perception was. He says that the rifle was raised and was being aimed at somebody. Yes. And if it turns out the rifle was found right next to him, that's something that might lead one to believe that that probably happened. Yes, that would be correct. Does the record show whether the rifle had been fired in the time framework that would corroborate or corroborate what Sterling said? In terms of the record, it would be the report of other officers, and other officers, not only Marini and Canella, but other officers who heard reported hearing a shot before Sterling shot. I understand that, but what I'm asking is the rifle. We're talking about the rifle now. The rifle was there. Presumably some kind of ballistic report was done, some kind of review. Was any report done that shows up in the record that indicates whether that rifle was fired or whether a shell casing was still in the gun? The rifle was fired earlier in the evening. The two shots, but not fired later? There was no evidence one way or the other that there was or wasn't. That's confusing. Tell me what evidence you're looking at in the record about when the rifle was fired. You said it was fired earlier in the evening. That's based upon the fact that two people were shot? Or examination of the rifle indicated that it was a shot? Well, actually, there were other shell casings found toward the front of the house where those shots were fired. As well, there was a casing found near the kitchen area, which was assumed that he shot in the air. Okay, but there were no shell casings found in the area where his body was ultimately found, right? Yes, that's correct. Okay, and Mr. Schweiger just suggested that basically it just doesn't add up. What Sterling is saying does not add up because there are no casings there. The spotter said he didn't hear or see what Sterling said. He said he saw and heard. The two other officers were in the ditch four minutes earlier. You said there's no evidence that the rifle was fired later. What inferences are we entitled to draw from that, if any? I think when you look at it from the perspective of Officer Sterling, what did he see? What did he hear? What he saw was Long holding the rifle facing the direction of where the officers were. And then he heard the report from he shot at them. But he also said, if I understood correctly, and as I recall from my notes on this, he also claimed that he heard a shot, right? That's correct. So if the gun did not indicate that it had been discharged, then Officer Sterling would have to be lying, I suppose is the best way to put it, right? You can't have it both ways. Right, for purpose of the motion, yes. However, it doesn't matter whether or not, for the qualified immunity analysis, it wouldn't matter whether or not the shot was actually taken because what Officer Sterling perceived when he saw Long holding the rifle and the report that they were being fired upon, that there was an immediate threat to those officers, and that's what caused him to take the shot. Well, that's for issues of qualified immunity, but in terms of whether or not a constitutional violation took place, that's another issue, isn't it? Yes, that's correct. But in terms of whether or not the shot, it doesn't matter for those purposes whether or not the shot was actually fired because it's based upon what Officer Sterling perceived and whether that was reasonable. And in that regard, we would dispute what counsel's argument about the expert going out and taking a look at the scene after the fact, day and night, because, again, you have to view it from the perspective of a reasonable officer at the scene and not with the 20-20 vision of hindsight. The standard under Scott v. Henry, which was cited earlier by Swigert, is really what Sterling believed that Long posed an immediate threat to his fellow officers. Is it your contention that if we draw an inference that he was lying and that Sterling was lying about having seen Long shoot the gun that he was holding, does that change our analysis of whether or not he felt his officers were in danger? No, because what's undisputed is that the radio transmission from Officers Marini and Canella So that then goes back to the other point that is made in the record, that these folks were in the ditch four minutes before and that also there is some improbability in that account as well. But whether or not they were in the ditch earlier or not, that's not a material fact in terms of what their report was over the radio that they were being shot. So if the rifle was not shot, which apparently is the case, and so Sterling could not have seen it shot, it could not have heard it shot. The two officers were in the ditch four minutes earlier. If they radioed them and said we've been shot at and yet Sterling can see Long and Long is not shooting anybody, what are we to make of that? Well, under the CADS, which Stryker had talked about, the officer Sterling shot was taken almost either simultaneously or immediately after the report by Officers Marini and Canella that they were being shot at. So you're arguing that it's the exigency, even though in the cold analysis of looking back at this point, it doesn't make a lot of sense in terms of its details. Here he is, guy's got a gun, he's shot two people before, he's screaming, yelling obscenities at everybody. We're supposed to look at it in terms of this pressure cooker. He gets this report, he's not obligated to sit there and analyze whether this makes any sense, he just shoots them. Is that right? Well, it's not that he doesn't analyze it, but he's looking at it with all of those facts and circumstances that he has to react to the second reaction. He sees the immediate threat and he responds. Anything further, Counsel? I have nothing further. Thank you, Counsel. The case just argued will be submitted for decision and we will hear argument in B.V.
judges: O'scannlain, Tashima, M. Smith